UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.: 4:24-CV-484-MW/MAF

FORREST CRAIG MCCONLEY,

     Plaintiff,

v.

WELLS FARGO BANK, N.A. and
WELLS FARGO CLEARING
SERVICES, LLC., d/b/a WELLS FARGO
ADVISORS, LLC,

     Defendants.

_____/

**DEFENDANT WELLS FARGO CLEARING SERVICES, LLC'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendant Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors, LLC ("WFA"), under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves to dismiss Plaintiff's Amended Complaint with Jury Trial Demand ("Amended Complaint") [ECF No. 24], in its entirety because all claims are barred by applicable statutes of limitations, for lack of standing, and for failure to state a claim against WFA upon which relief can be granted. WFA also requests the Court to strike Plaintiff's request for punitive damages under Federal Rule of Civil Procedure12(f).

I.    **INTRODUCTION**

Plaintiff, Forrest Craig McConley is an architect and general contractor residing in Tallahassee, Florida. Amend. Compl. ¶ 1. He is the father of Benjamin McConley, a convicted felon currently serving a 156-month sentence after pleading guilty to federal criminal charges for conspiracy to commit wire fraud related to a film financing Ponzi scheme perpetrated from 2012 to 2019. S*ee* Judgment as to Benjamin Forrest McConley, *U.S.A. v. McConley, et al.*, Case No. 19-CR-20447-Singhal, S.D. Fla. (Sept. 14, 2021), attached as Exhibit A.[1]

Plaintiff filed his Original Complaint in this matter on December 3, 2024. [ECF No. 1]. The Original Complaint alleged that in or around March 2015, Plaintiff's son fraudulently opened a business brokerage account at WFA (the "Pawnee Account") in the name of Pawnee Properties, LLC ("Pawnee"). [ECF No. 1, ¶ 17]. The Original Complaint claimed damages purportedly caused by WFA's

---

[1] The Court is permitted to take judicial notice of relevant public documents on review of a motion to dismiss. *Ellison v. Postmaster Gen., United States Postal Serv.*, No. 20-13112, 2022 U.S. App. LEXIS 27555, at *18 (11th Cir. Oct. 3, 2022) (*citing Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999)); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action."). The Court need not convert the motion to dismiss to a motion for summary judgement to consider the relevant public documents in deciding the motion. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment.").

closure of the Pawnee Account and the Pawnee Account having been associated with Plaintiff's son and his fraudulent scheme. [*See generally* ECF No. 1].

WFA filed a Motion to Dismiss the Original Complaint. [ECF No. 16]. Thereafter, Plaintiff received leave to amend and filed the Amended Complaint on April 2, 2025. [ECF No. 24]. The Amended Complaint similarly alleges that in March 2015, the Pawnee Account was fraudulently opened, but instead of attributing any fault or connection to his son and his fraudulent scheme, Plaintiff now claims that the fraudulent account was created out of a "false introduction" to WFA from co-Defendant, Wells Fargo Bank as part of an unrelated "false accounts fraud," involving the "move[ment of] customer funds from existing accounts into newly-created accounts without the customers' knowledge or consent." Amend. Compl. ¶¶ 7, 17. The Amended Complaint tactically omits all references to Plaintiff's son and his fraudulent scheme that appeared in the Original Complaint. The Amended Complaint also makes reference to "brazen acts of fraud" by either or both Defendants, but the Amended Complaint does not include a cause of action for fraud against Defendants.

Regardless of how Plaintiff attempts to shift blame or re-characterize his claims, they are all long barred by the applicable statutes of limitations. In Plaintiff's own words, "By the end of 2015…the damage was already done to Plaintiff." Amend. Compl. ¶ 10. By then, Plaintiff claims Defendants' Compliance Department

3

closed the Pawnee Account. *Id.* As a result of the account closure, Plaintiff alleges he was reported (but does not specify by whom) to "various national and international banking systems, including but not limited to Global Security and CHEXsystems[2] which caused Plaintiff's banking relationships to be terminated at all levels, locally and international." *Id.* at ¶ 11.

Plaintiff alleges that institutions such as Bank of America, American Express, and Tallahassee State Bank cancelled his credit lines, credit cards and operating lines of credit, recalled his mortgage, and closed his savings and loan accounts (these events are hereinafter collectively referred to as the "Banking Relationship Terminations"). Amend. Compl. ¶ 12. He also claims he was not able to be approved for new banking relationships, therefore, his business as an architect and general contractor was no longer viable. *Id.* at ¶ 13.

Another tactical fact-swap between the Original Complaint and Amended Complaint relates to the source of Plaintiff's alleged multi-million-dollar damages. In the Original Complaint, Plaintiff claimed over $100 million in damages related to the "American English Academy" in Sofia, Bulgaria. [DE 1, ¶ 19]. WFA's Motion to Dismiss debunked Plaintiff's initial claims that he suffered any damages related

---

[2] Chex Systems is a consumer reporting agency under the Fair Credit Reporting Act. *Chex Systems*, https://www.chexsystems.com/. Consumers may retrieve a free copy of their Chex Systems report annually and may dispute or demand proof of the information contained in the report. *Id., see also* https://en.wikipedia.org/wiki/ChexSystems.

to that project as a result of purported actions by WFA or the Banking Relationship Terminations based on Plaintiff's prior sworn testimony at the criminal trial of his son's co-conspirator, Jason Van Eman.[3] [ECF No. 16, pp. 4-5]. Because that theory is no longer viable, Plaintiff now claims his $100 million-plus damages stem from the cancellation of a residential/commercial community development project called, "The Legacy Hills Project," also in Sofia, Bulgaria, for which the financing bank recalled its pledge causing the contract to be awarded to a competitor firm instead of to Plaintiff. Amend. Compl. 13.

Distilled to its essence, Plaintiff is suing WFA for **correctly** closing down the Pawnee Account almost immediately after it was opened. Plaintiff seeks to hold WFA liable for damages that either do not exist or which have nothing to do with WFA.

Plaintiff cannot state a claim against WFA because all of the claims in the Amended Complaint are barred by applicable statutes of limitations. Further, Plaintiff lacks standing to assert claims relating to the Pawnee Account in his individual capacity and because he fails to allege an injury in fact that is traceable to

---

[3] Plaintiff previously testified that the American English Academy was owned by his aunt and uncle, and that he was not able to complete the related development project because his aunt sold the project because she did not want to "fight the politics." *See* Transcript of Trial Proceedings, *U.S.A. v. Jason Van Eman,* Case No. 19-CR-20447-Singhal (S.D. Fla. Apr. 25, 2022), an excerpt of which is attached as Exhibit B.

any wrongful conduct by WFA. Lastly, the Amended Complaint fails to state a claim upon which relief can be granted because Plaintiff either makes claims that are inapplicable or not legally cognizable, or fails to plead facts sufficient to state the claims. Accordingly, WFA requests the Amended Complaint be dismissed in its entirety.

## II.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain **sufficient factual matter**, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). The Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, **no construction of the factual allegations will support the cause of action**." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (emphasis added). This tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

"While *pro se* pleadings are liberally construed and held to less stringent standards than those drafted by attorneys, they **still must suggest some factual basis for a claim**." *Jackson v. JPay, Inc.*, 851 F. App'x 171, 172 (11th Cir. 2021) (citing *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015)) (emphasis added).

A defendant may raise a statute of limitations defense in a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitation period has run." *Foster v. Savannah Comm'n*, 140 F. App'x 905, 907 (11th Cir. 2005) (quoting *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982)). As the Supreme Court has stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.

*Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "When the time-bar is apparent from the face of the complaint, the plaintiff bears the burden of pleading allegations sufficient to toll the statute of limitations." *Padilla v. Porsche Cars. N. Am.*, Inc., 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019); see *Patel v. Diplomat*, 605 F. App'x 965, 966 (11th Cir. 2015).

### III.   <u>ARGUMENT</u>

###   A.   **Plaintiff's Claims are Barred by Applicable Statutes of Limitations**

This case arises from events that took place ten years ago. The Pawnee Account was opened at WFA in 2015 and was closed in the same year. According to the Amended Complaint, by the time the Pawnee Account was closed, Plaintiff had already suffered the alleged damages.

In Florida, the statute of limitations runs "from the time the cause of action accrues." § 95.031, Fla. Stat. (2015). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat.

Plaintiff brings six causes of action against WFA: (1) identity theft, which would be subject to at most a five year statute of limitations;[4] (2) negligent failure to warn, negligent training of personnel, intentional mental distress, and intentional infliction of emotional distress, to which a four year statute of limitations applies; and lastly (3) defamation, which is subject to a two year statute of limitations. *See* § 772.17, Fla. Stat. (2015) (limitations period for actions brought under the civil theft statute); § 95.11(3)(a), Fla. Stat. (2015) (four-year state of limitations for an action founded on negligence); *Kendron v. SCI Funeral Servs. of Fla., LLC*, 230 So. 3d

---

[4] As further explained in below, identity theft is not a recognized civil cause of action in Florida. Therefore, for the sake of argument this analysis assumes the identity theft count is akin to an action for civil theft or a claim founded on fraud.

636, 637 (Fla. 5th DCA 2017) (citing § 95.11(3)(a), (o), Fla. Stat. (2016)) ("A claim alleging an intentional tort or negligence is required to be brought within four years from the time the plaintiff's cause of action accrued."); *Watkins v. Dejesus*, 786 F. App'x 217, 219 (11th Cir. 2019) (citing Fla. Stat. § 95.11(4)(g)) ("Under Florida law, the tort of defamation (whether libel or slander) is subject to a two-year statute of limitations.").

### 1. Count I

Plaintiff's Count I for identity theft is subject to *at most* a five-year limitations period, which began running when Plaintiff "should reasonably have known of the possible invasion of legal rights." *De Szterensus v. Bank of Am., N.A*., No. 08-22669-CIV-Cooke/Bandstra, 2010 U.S. Dist. LEXIS 8229 at *9 (S.D. Fla. Feb. 1, 2010) (citing *Huff Groves Trust v. Caulkins Indiantown Citrus Co*., 829 So. 2d 923 (Fla. 4th DCA 2002)). The Amended Complaint describes multiple instances in or about 2015 when Plaintiff reasonably should have known about the alleged identity theft. In paragraph 12, Plaintiff states that he suffered "extensive injuries" including at least three financial institutions canceling his lines of credit, credit cards, credit lines, recalling his mortgage, and closing his savings, checking, and loan accounts. Amend. Compl. ¶ 12. Taking these allegations as true, Plaintiff reasonably should have known about the alleged identity theft many years ago. Plaintiff reasonably should have known by the end of 2015, or even by the end of 2016, that his identity

was "stolen." Thus, the statute of limitations would have run by 2020, or at the latest, 2021.

### 2. Counts II and III

Counts II and III for negligent failure to warn and negligent training of personnel – assuming either of these claims are applicable to the facts of this case – both carry a four-year statute of limitations that accrues when the last element of the cause of action is complete. § 95.031(1); *see also Evanston Ins. Co. v. William Kramer & Assocs., LLC,* No. 8:16-cv-02324-T-60SPF, 2019 U.S. Dist. LEXIS 212324, at *5 (M.D. Fla. Dec. 10, 2019) (citing *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla. 2016)). "The last element of a cause of action based on negligence is actual loss or damage." *Lehman Bros. Holdings v. Phillips*, 569 F. App'x 814, 817 (11th Cir. 2014) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)). "[O]nce damage occurs, the fact that the exact amount of damages is uncertain will not stop the limitations clock from running." *Id.* (citing *Kellermeyer v. Miller*, 427 So.2d 343, 346-47 (Fla. 1st DCA 1983)).

According to the Amended Complaint, Plaintiff was damaged by the end of 2015 after he was allegedly reported to domestic and international banking systems and experienced multiple Banking Relationship Terminations. *See* Amend. Compl.

¶ 10. Therefore, the four-year limitations period began to run by the end of 2015 and expired by the end of 2019.

### 3. Counts IV and V

Counts IV and V, for intentional mental distress and intentional infliction of emotional distress, respectively, accrued when the plaintiff experienced the severe emotional distress for which he now seeks monetary damages. *See Kendron*, 230 So. 3d at 637 (Fla. 5th DCA 2017). Plaintiff alleges he experienced intentional mental distress and intentional infliction of emotional distress when he experienced "financial detriment." Amend. Compl. ¶¶ 27-28. To the extent Plaintiff experienced severe emotional distress following his "financial detriment", which WFA denies, he experienced it in or about 2015 following closure of the Pawnee Account, alleged reporting to "banking systems," and near-subsequent purported Banking Relationship Terminations. Thus, the statute of limitations would have run by the end of 2019.

### 4. Count VI

As for Count VI, "[a] defamation claim based on a single publication, exhibition, or utterance accrues on the date of publication. *Watkins v. Dejesus*, 786 F. App'x 217, 219 (11th Cir. 2019) (analyzing accrual under Florida law), *see also* § 770.07. Fla. Stat. (2015). Here, the single publication or exhibition Plaintiff complains of is the alleged reporting made to credit reporting agencies such as

ChexSystems and the like, which Plaintiff describes as a report to "the national and international banking system." Amend. Compl. ¶ 29. According to the Amended Complaint, since the Pawnee Account was closed in 2015, and the alleged report was made soon thereafter ("By the end of 2015…the damage was already done to Plaintiff." Amend. Compl. ¶ 10), the cause of action for defamation accrued when the alleged report was made in or around the end of 2015. Even using the last day of 2015 as the latest possible accrual date to afford Plaintiff the benefit of the doubt, the two-year statute of limitations period expired by the end of 2017.

In the Amended Complaint, Plaintiff includes a section on statutes of limitations[5], in which he attempts to rationalize that as a lay-person, he did not put together the cause of his alleged damages until a court proceeding in April 2022. Amend. Compl. ¶ 30. That Plaintiff allegedly experienced a "financial dark ages" for a period of nearly 10-years supposedly without making a single inquiry into the cause of his alleged detriment does not enable him to avoid the application of statutes of limitation.

---

[5] This section also includes case law to support Plaintiff's position that although a limitations period is governed by the state in which the litigation arose, the date of accrual is governed by federal law. Amend. Compl. ¶ 32. The Court should disregard the line of cases Plaintiff cites on this point because they all relate to *Bivens* claims brought under 42 U.S.C. 1983 and are wholly inapplicable to this case.

Because each and every claim Plaintiff brings against WFA is barred by applicable statutes of limitations, Plaintiff fails to state a claim against WFA upon which relief can be granted and the claims must be dismissed.

## B. The Amended Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing to Bring Claims Against WFA.

Plaintiff lacks standing to assert claims against WFA because, even when viewing the allegations in the Amended Complaint as true, Plaintiff did not suffer a concrete and particularized injury in fact that is fairly traceable to the allegedly wrongful conduct of WFA. Instead, it is clear Plaintiff's injuries, if any, were sustained as a result of the actions of third parties not before this court.

The United States Constitution requires plaintiffs to make a minimum showing of standing to assert a cause of action. The "irreducible constitutional minimum" standing requires that "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)).

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized…and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (internal citations and quotations omitted). For an injury to be

particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). "[C]onclusory allegations of injury are not enough to confer standing." *Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1343 (11th Cir. 2021).

A plaintiff must also demonstrate a "causal connection" from the injury in fact that is "fairly … trace[able] to the challenged action of the defendant, and **not**… **the result [of] the independent action of some third party not before the court**." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (emphasis added). "Questions regarding standing implicate a court's subject-matter jurisdiction and 'must be addressed prior to and independent of the merits of a party's claims.'" *Knowles v. McDonald's USA, LLC*, No. 16-81657-CIV-MARRA, 2018 U.S. Dist. LEXIS 232744, at *4 (S.D. Fla. Feb. 9, 2018) (quoting *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008)).

### 1. Plaintiff Lacks Standing to Sue for Business Damages in his Individual Capacity.

Plaintiff alleges the fraudulent WFA Account was opened using his, "personal and professional profile." Amend. Compl. ¶ 7. The professional profile relates to Plaintiff's entity, "Pawnee Properties, LLC." Amend. Compl. ¶ 6. Plaintiff goes on to allege monetary damages resulting from the cancellation of contracts, at least one of which was, "terminated and the project was awarded to another **firm**." Amend. Compl. ¶ 13 (emphasis added).

Under Florida law, "a member of an LLC [is not permitted] to sue individually for damages arising out of its status as a member of a company unless the damages arise from a direct harm and special injury, or if there is a separate duty owed from the defendant to the plaintiff member." *Smith v. Williams*, No. 5:14-cv-144-RS-EMT, 2015 U.S. Dist. LEXIS 1046, at *2 (N.D. Fla. Jan. 6, 2015). Any purported damages suffered by Plaintiff are indirect damages flowing from his status as the managing member of Pawnee. WFA did not owe a separate duty to Plaintiff, a purported non-customer who claims he did not personally open any account at WFA, but rather, that the Account at issue was opened fraudulently by someone other than Plaintiff. *Herrera v. TD Bank, N.A.*, 682 F. Supp. 3d 1271, 1275 (S.D. Fla. 2023) ("[A] bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.").

Accordingly, to the extent the alleged monetary damages do not belong to Plaintiff, individually, but rather belong to Pawnee Properties, LLC or some other entity, Plaintiff lacks standing to bring claims against WFA in his individual capacity.

### 2.    Plaintiff's Alleged Injuries are not Traceable to WFA.

Plaintiff claims he suffered monetary and emotional damages in or about 2015 after he was supposedly reported to domestic and international "banking systems" resulting in Banking Relationship Terminations and subsequent purported lost

business contracts. These injuries are not "fairly traceable" to any conduct by WFA and therefore must be dismissed for a lack of Article III standing.

The link, if any, between WFA and Plaintiff's alleged injury is an attenuated one. Plaintiff's complaint against WFA is that an employee allegedly opened a fraudulent account for Pawnee using Plaintiff's "personal and professional profile," and then WFA's Compliance Department terminated the fraudulent account within months of it being opened. From there, Plaintiff contends he was reported to domestic and international "banking systems." Then, Plaintiff claims the report to domestic and international "banking systems" caused multiple Banking Relationship Terminations. At some indeterminate time after that, Plaintiff alleges he lost financing for a real estate development project in Sofia, Bulgaria worth over $100 million. As a result, Plaintiff claims he suffered emotional distress. At this point, Plaintiff's alleged damages are at least three steps removed from any alleged act by WFA.

There is no allegation in the Amended Complaint that WFA reported Plaintiff to the "banking systems" he blames for his financial demise. There is also no allegation that connects WFA to the Banking Relationship Terminations in any way. Even further, there is no allegation that supplies a causal link between WFA closing the Pawnee Account and Plaintiff's ultimate alleged damages – the loss of multi-million-dollar business contracts. Plaintiff has not established that his emotional

distress and monetary damages are causally linked to WFA's act of closing the Pawnee Account.

Even if a causal link did exist, it would be too remote and attenuated to render Plaintiff's alleged injuries "reasonably traceable" to WFA. *See Loggerhead Turtle v. Cty. Council of Volusia Cty.*, 148 F.3d 1231, 1247 (11th Cir. 1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)) ("The causal link may become 'too attenuated' if the injury is 'the result of the independent action of some third party not before the court.'").

Accordingly, Plaintiff lacks standing to sue WFA because his alleged injuries are not fairly traceable to the challenged conduct of WFA.

**C. The Amended Complaint Fails to State a Claim Against WFA.**

To the extent any of Plaintiff's claims are not barred by statutes of limitations, the Amended Complaint further fails to state a claim upon which relief can be granted because Plaintiff either asserts claims that are inapplicable to the facts or not legally cognizable as a matter of law or fails to make allegations sufficient to state the claims.

### 1. Count 1 – Identity Theft

Neither federal nor state law creates a private right of action for violation of criminal identity protection laws. *See Robinson v. ASA Coll.*, No. 1:17-cv-21421-UU, 2017 U.S. Dist. LEXIS 60410, at *2 (S.D. Fla. Apr. 19, 2017) ("Plaintiff cannot

bring a claim under 18 U.S.C. § 1028, as this is a criminal fraud statute that "provides no private right of action."); *Hall v. Cooks*, 346 So. 3d 183, 189 (Fla. 1st DCA 2022) ("Criminal statutes by themselves do not authorize civil enforcement unless a civil remedy is made available."); *see also Deligdish v. Gerrell*, No. 05-2022-CA-042209, 2024 Fla. Cir. LEXIS 1386 at *6 (Fla. 18th Cir. Ct. Jul. 21, 2024) ("[T]here is no cause of action for identity theft in Florida created by Fla. Stat. § 817.568 or Fla. Stat. § 817.569."). Therefore, Count I is not actionable and should be dismissed outright.

The Florida Legislature has delineated the specific criminal statutes under which a claim can be asserted by a private citizen. Those specific criminal statutes are prescribed in Florida's Civil Theft statute, § 772.11 (2024). The Florida Legislature chose to allow private citizens to initiate a civil claim for relief if they were "injured in any fashion" by a violation of Florida criminal statutes appearing at sections 812.012-812.037 or section 825.103(1). § 772.11, Fla. Stat. (2024). While the Legislature created a right to civil recovery for violation of many criminal statutes, identity theft is not one of them.

Second, even if identity theft were encompassed by Florida's civil theft statute (and it is not), Plaintiff failed to meet the necessary conditions precedent set out in the statute to state a claim. The statute requires that, **"**[b]efore filing an action for damages under this section, the person claiming injury must make a written demand

18

for $200 or the treble damage amount of the person liable for damages under this section." § 772.11, Fla. Stat. Plaintiff made no such demand on WFA before filing this claim.

Therefore, Count I fails to state a claim upon which relief can be granted, because. as a matter of law, a private claim for identity theft is not actionable.

### 2.  Count II – Negligent Failure to Warn

Negligent failure to warn is a products liability cause of action. *See Nbis Constr. v. Liebherr-Am., Inc.*, 93 F.4th 1304, 1312-13 (11th Cir. 2024) ("Florida courts have described cases concerning this duty to warn as 'products liability action[s] . . . based on negligence.'") (citations omitted). Plaintiff does not allege that WFA is the manufacturer or distributor of a product that caused him harm. This is not a products liability case. Negligent failure to warn can also arise in a premises liability case. *Pride v. Carnival Corp.*, No. 23-cv-22121-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 187919 at *9 (S.D. Fla. Oct. 19, 2023) (in a premises liability case involving dangerous conditions, "[n]egligent failure to warn 'sounds in negligence but is a separate cause of action with distinct elements"). Plaintiff also does not make any allegation of physical harm due to failure to warn of an unsafe premises, and that theory is also inapplicable here.

However, Plaintiff does allege that WFA's Compliance Department "did not verify, with Plaintiff, the reason why multiple large deposits were made or

confirm the investments made in the stock market, as is required before every single securities and stock investments." Amend. Compl. ¶ 23. Therefore, for purposes of this Motion to Dismiss, Plaintiff's "negligent failure to warn" cause of action will be evaluated as akin to a standard negligence claim.

"Under Florida law, '[t]o maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages.'" *Hsi Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (quoting *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007)). Plaintiff does not claim to have had any account in his name at WFA, and therefore contends that WFA owed him a duty because Plaintiff's identity was used to open the Pawnee Account. However, because Plaintiff claims he did not actually open the account, but rather the account was opened without his authorization, Plaintiff does not allege a customer relationship with WFA. The Eleventh Circuit generally holds that financial institutions do not owe a duty to non-customers to protect them from fraud. *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1324 (M.D. Fla. 2015) ("Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'"). Therefore, as a matter of law, WFA did not owe Plaintiff a duty of care. Without a duty to support it, Plaintiff's negligence-based claim fails.

Even assuming WFA did owe Plaintiff a duty, the alleged breach was not the direct and proximate cause of Plaintiff's alleged damages. Plaintiff claims WFA breached its duty by not (1) verifying large deposits or (2) confirming securities transactions in the account. Amend. Compl. ¶ 23. The Amended Complaint does not claim damages related to the funds that were transferred into or invested within the Pawnee Account. Plaintiff does not claim investment losses or that any of the funds deposited into the Account even belonged to him. Thus, WFA's alleged breach did not cause Plaintiff's purported damages.

Accordingly, absent a duty owed or damages proximately caused by the alleged breach, Plaintiff's claim for negligent failure to warn, or just plain negligence, fails to state a claim as a matter of law.

### 3.  Count III – Negligent Training of Personnel

To support his negligent training claim, Plaintiff alleges that WFA failed to train its Compliance Department to (1) contact account holders to confirm large transactions, (2) call to confirm individual securities transactions, (3) file appropriate reports for large unconfirmed transactions, and (4) to flag income tax payment activity. The same elements of duty, breach, causation, and injury apply to negligent training claims as in other negligence claims. *Archer v. City of Winter Haven*, 846 F. App'x 759, 767 (11th Cir. 2021) (analyzing a claim for negligent training under Florida law). In addition, a plaintiff asserting a negligent training claim must also

allege he was harmed by an "employer's failure to adequately train an employee[] and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff." *Id.* (quoting *Alder v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1388 (S.D. Fla. 2014)).

Plaintiff fails to plead any facts supporting his conclusory allegation that WFA breached its duty to adequately train its employees, causing the training to be rendered negligent. Plaintiff also fails to allege how WFA's alleged negligent training of its Compliance Department resulted in Plaintiff's purported damages. Plaintiff states in the Amended Complaint that WFA's Compliance Department terminated the Pawnee Account within months of it being opened. Taking Plaintiff's allegation as true negates the contention that the Compliance Department was negligently trained. Plaintiff does not allege that terminating the account was incorrect, or that the account termination in and of itself caused Plaintiff damages. Plaintiff instead attacks how WFA could have better flagged certain transactions occurring within the Pawnee Account. Again, Plaintiff does not allege damages flowing from the deposits or transactions within the Account. He claims emotional damage and monetary damages related to the cancellation of business contracts. Therefore, Plaintiff does not allege damages proximately caused by negligent training of WFA's employees.

For these reasons, Plaintiff fails to state a claim for negligent training upon which relief can be granted.

### 4. Counts IV and V – Intentional Mental Distress and Intentional Infliction of Emotional Distress

Plaintiff requests $100 million to compensate him for perceived emotional damages he suffered following his "total financial detriment." Amend. Compl. ¶¶ 27, 28. While Plaintiff separates into two separate Counts his claims for Intentional *Mental* Distress and Intentional Infliction of *Emotional* Distress, Florida courts do not recognize a difference between "mental" and "emotional" distress. *See Nims v. Harrison*, 768 So. 2d 1198, 1199 n.2 (Fla. 1st DCA 2000) ("The terms 'mental distress' and 'emotional distress' appear to be used interchangeably in judicial opinions and scholarly writings. We discern no difference in the terms.") Therefore, for purposes of dismissal for failure to state a claim, this section addresses both Counts in tandem.

"To state a claim under Florida law for intentional infliction of emotional distress, a plaintiff must demonstrate '(1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a civilized community (3) and that causes the victim emotional distress (4) that is severe.'" *Hammer v. Sorensen*, 824 F. App'x 689, 694 (11th Cir. 2020), quoting *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2nd DCA 2018). For an intentional act to be "outrageous," "it is not enough 'that the defendant has acted

with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.*, quoting *Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. 5th DCA). "To qualify as 'severe,' emotional distress must be 'of such a substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it.'" *Id.* (quoting *Kim*, 249 So. 3d at 1305) (citations, internal quotations, and alteration omitted). "The standard to satisfy 'severity' is 'high' to 'prevent the tort from becoming a venue for litigation over every emotional injury.'" *Id.* at 695. In other words, this high bar reserves recovery on a claim for intentional infliction of emotional distress to the most severe of circumstances.

To prevail on Counts IV and V, Plaintiff must allege facts sufficient to show that WFA engaged in intentional reckless conduct which caused Plaintiff harm. While Plaintiff does reference allegedly wrongful conduct to "orchestrate" a scam including the alleged use of "electronic signatures," and making federal tax payments on Plaintiff's behalf, Plaintiff does not contend these acts were done intentionally, as opposed to negligently. Furthermore, Plaintiff's purported emotional distress is not "enduring," such that he is entitled to recovery damages.

The law is clear – recovery for emotional damages is reserved for the most severe of circumstances. Plaintiff does not sufficiently allege severity, that is to say,

24

he does not allege that no reasonable person in a civilized society should be expected to endure the emotional distress related to potential identity theft or the opening/closure of a fraudulent account.

Accordingly, Plaintiff fails to state a claim for emotional or mental distress.

### D. Plaintiff's Request for Punitive Damages Should be Stricken.

Federal Rule of Civil Procedure 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter…on motion made by a party." Fed. R. Civ. P. 12(f). Accordingly, the court may strike a plaintiff's demand for attorney's fees and punitive damages when the plaintiff does not allege an entitlement to them. *See Arasteh v. LuxUrban Hotels Inc.*, No. 24-21990-CIV, 2024 U.S. Dist. LEXIS 180319, at *12 (S.D. Fla. Oct. 2, 2024) (striking the plaintiff's demand for punitive damages because it was insufficiently alleged); *Reed v. Walt Disney Parks & Resorts*, No. 6:20-cv-1346-Orl-40DCI, 2020 U.S. Dist. LEXIS 257333, at *3 (M.D. Fla. Nov. 9, 2020) (striking the plaintiff's demand for attorney's fees because no statutory or contractual basis for attorney's fees was alleged).

In addition to his request for compensatory damages and lost wages, Plaintiff makes an additional request for punitive damages. As it pertains to Count I, to the extent Plaintiff brings a cause of action under Florida's civil theft statute the statute

explicitly bars an award of punitive damages. § 772.11, Fla. Stat. ("Punitive damages may not be awarded under this section.").

As to the remaining counts, Plaintiff fails to adequately plead a request for punitive damages because he does not allege that in closing the Pawnee Account, WFA engaged in grossly negligent or intentional misconduct. *Long v. Kropke*, 370 So. 3d 319, 321 (Fla. 4th DCA 2023). Additionally, because Plaintiff's other causes of action fail to state a claim, and should be dismissed, his claim for punitive damages is also deficient.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons and authorities cited, Defendant Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors, LLC, respectfully moves this Honorable Court to enter an order dismissing Plaintiff's Amended Complaint in its entirety.

Dated: April 30, 2025                    Respectfully submitted,

By: *s/ Sara Soto*
Sara Soto, Esq. (Fla. Bar No. 265152)
Kalie Maniglia, Esq. (Fla. Bar No. 1039909)
Bressler, Amery & Ross, P.C.
515 E. Las Olas Blvd., Ste. 800
Fort Lauderdale, FL 33301
Telephone: (305) 501-5485
Facsimile:  (305) 501-5499
Primary E-mail: ssoto@bressler.com
Primary E-mail: kmaniglia@bressler.com

Secondary E-mail: ktoulon@bressler.com
*Counsel for Defendant Wells Fargo Clearing
Services, LLC d/b/a Wells Fargo Advisors, LLC*

## LOCAL RULE 7.1(F) CERTIFICATION OF WORD LIMIT

Pursuant to N.D. Fla. Local Rule 7.1(F), I certify that this memorandum of law is in compliance with the Court's word limit. According to the word processing program used to prepare this memorandum, the memorandum contains 6,086 words.

By: *s/ Sara Soto*
Sara Soto

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of April, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day via U.S.P.S. Regular Mail to pro se Plaintiff Forrest Craig McConley, 331 Spruce Creek Drive, Tallahassee, FL 32312, and via electronic mail to usmcclegal@gmail.com, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner.

By: *s/ Sara Soto*
Sara Soto